1997-NMCA-054

941 P.2d 509

**CITY OF ALBUQUERQUE,
Petitioner–Appellee,**

v.

**Joseph CHAVEZ, Respondent–Appellant.**

**No. 17356.**

Court of Appeals of New Mexico.

April 1, 1997.

Robert M. White, City Attorney, Bruce T. Thompson, Assistant City Attorney, Albuquerque, for Petitioner–Appellee.

Ira Bolnick, Fitzpatrick & Bolnick, Albuquerque, for Respondent–Appellant.

## OPINION

FLORES, Judge.

1. Joseph Chavez (Chavez), a corrections officer for the City of Albuquerque (the City), was terminated from his employment. After a hearing, the hearing officer ultimately recommended, and the Personnel Board (the Board) approved, reversal of Chavez's

termination. The City appealed to the district court, which found that the hearing officer "was not impartial," and remanded for a new hearing. On interlocutory appeal, we take this opportunity to address when, as a matter of law, a hearing officer should disqualify himself or herself on an issue of bias, and by what standard a court should review that decision for error. We affirm the district court and remand for a fair hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. The City terminated Chavez from his position as a corrections officer at the Bernalillo County Detention Center (BCDC) for applying excessive force to a prisoner. In the early morning hours of July 13, 1994, Chavez was recorded on BCDC surveillance video running toward a prisoner from behind, striking the prisoner, and propelling the prisoner's upper body into the wall. At the time of this incident, the prisoner was on the phone with his back to Chavez, and was moving away from Chavez, apparently unaware of his approach. Several other guards became involved in the altercation that ensued. Following the struggle, the video shows Chavez carrying the prone prisoner by the handcuffs, shackled and face down, into a holding cell. In Chavez's report of the incident filed later that same night, he stated that he applied force because the prisoner "advanced toward me in an aggressive manner."

3. The director of BCDC terminated Chavez after an independently-contracted internal affairs investigation, and a pre-determination hearing based on Chavez's conduct, his prior record of similar conduct, and the conflict between the video record and Chavez's report of the incident.

4. Chavez challenged his termination. Pursuant to the City's Merit System Ordinance (MSO), see Albuquerque, N.M., Rev. Ordinances ch. 3, art. I, §§ 3–1–1 to –25 (1978 & Supp.1989), the grievance was set for a hearing before an independent personnel hearing officer (hearing officer).[1] At the beginning of the hearing and in the context of discovery motions, the City moved to disqualify the hearing officer. The City based its motion both on the fact that Chavez's trial attorney, Paul Livingston, immediately prior to a discovery proceeding in the case, served the hearing officer with a "courtesy copy" of a separate lawsuit Livingston had filed against the hearing officer, and on Livingston's continued reference to that suit "throughout that hearing, every time that there was any kind of a real dispute." The City noted that this lawsuit against the hearing officer stemmed from his role as the hearing officer in a similar case, and specifically involved the hearing officer's rulings on discovery motions. The City also noted that the hearing officer (1) expressed concern for the personal financial impact the suit would have on him; (2) asked Livingston to reconsider suing him; and (3) admitted to Livingston that "[q]uite frankly, you intimidate me. I have never been sued before." The hearing officer denied the City's motion, responding "I know I can be objective." The City renewed its motion to disqualify at least three times over the course of the hearing and each time the hearing officer responded that he believed he could be fair.

5. After the hearing, the hearing officer presented to the Board a summary of his findings and conclusions, and recommended that the Board reverse the City's decision to terminate and instead reinstate Chavez with a sixty-day suspension. The hearing officer made no reference to the City's repeated motions for his disqualification in his report and recommendation to the Board. Further, the stenographic record of the hearing was not fully transcribed until after the Board had approved the hearing officer's recommendation. Cf. Littlefield v. State ex rel. Taxation & Revenue Dep't, Motor Vehicle Div., 114 N.M. 390, 395, 839 P.2d 134, 139

---

1. The City's MSO Grievance Resolution Procedure directs an employee aggrieved by termination first to discuss the issue with her or his supervisors, then make a formal written complaint to the Chief Administrative Officer. MSO § 3–1–23(D)(1). If the employee is unsatisfied with the Chief Administrative Officer's decision, he or she may request a hearing from the Personnel Board, § 3–1–23(D)(2), which refers the matter to an independent Personnel Hearing Officer for hearing, § 3–1–23(D)(3).

(Ct.App.1992) (board that had access to record and concurred with hearing officer's recommendation not required to have reviewed the record in order to meet due process requirements).

6. The City appealed to the district court, arguing that the decision to reverse Chavez's termination was arbitrary and capricious, and alternatively, that the hearing officer should have been disqualified for bias. The district court reviewed the entire record, and found that the hearing officer "was not impartial," and remanded for a new hearing before an unbiased hearing officer. The district court then certified the case for interlocutory appeal, and this Court granted Chavez's application for an interlocutory appeal.

## II. *DISCUSSION*

7. This case involves two intertwined issues. The first issue relates to the standard of review this Court should apply when reviewing an administrative adjudication for possible bias. The second issue pertains to the question of what constitutes bias to warrant *remand for a new hearing*. The second issue is complicated by the fact that the tests New Mexico courts have developed to determine when bias in an administrative tribunal is impermissible have been constructed for the purpose of protecting the constitutional right to due process, whereas in this case the City, which has no such constitutional right, seeks protection from bias.

### A. Standard of Review

■ 8. We review appeals from administrative agency decisions under the same standard as the district court. *See Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989). Here, the MSO specifies that the Board's decisions are reviewable in the district court:

(a) Where the decision is arbitrary or capricious and is unsupported by substantial evidence; or

(b) Where the decision is in violation of applicable constitutional provisions or is otherwise illegal; or

(c) Where the decision is in excess of the statutory authority or jurisdiction of the Board.

MSO § 3–1–23(D)(5)(a)–(c).

### B. Deference to Administrative Board

■ 9. The parties dispute the proper standard of review; specifically, they dispute how much, if any, deference this Court should give to the decision of the Board and hearing officer. Chavez argues that this Court should give deference to the decision of the Board to reverse the City and reinstate Chavez. The City argues that because the issue of bias was not presented to the Board, deference to the Board is misplaced. We agree with the City.

10. In this case, the decision under review is the decision of the Board to adopt the hearing officer's recommendation and reinstate Chavez. The record reveals that the Board was never put on notice of the City's allegations of bias. Although the City at numerous times raised the motion to disqualify the hearing officer, the hearing officer made no reference to this issue in his statement of the case, his findings and conclusions, or his recommendation to the Board. The MSO prohibits the Board from considering any information beyond what is submitted by the hearing officer. *See* MSO § 3–1–23(D)(4)(a). Although the Board had authority to require the hearing officer to submit a complete transcript, *see* MSO § 3–1–23(D)(3) (hearing officer shall transmit to personnel board at least a summary record of the hearing, findings of fact, and his or her recommendation); MSO § 3–1–23(D)(4)(a)(3) (board may remand matter to hearing officer for further hearing or *a more detailed report* ), the Board was not required to do so if it followed the hearing officer's recommendation. *Compare Littlefield,* 114 N.M. at 395, 839 P.2d at 139 (board that had access to record and concurred with hearing officer's recommendation not required to have reviewed the record in order to meet due process), *with Board of Educ. v. New Mexico State Bd. of Educ.,* 106 N.M. 129, 131, 740 P.2d 123, 125 (Ct.App.1987) (fair hearing requires that board review the hearing officer's record before adopting a decision contrary to hearing officer's recommendation because

credibility of witnesses key to Board's decision). Here, because the Board had no occasion to consider bias, it makes no sense to defer to the Board when reviewing that issue. Accordingly, our review for bias is conducted without deference to the Board.

### C. Was the City Denied a Fair Hearing Because of Hearing Officer Bias?

11. The City argues that bias on the part of the hearing officer denied the City a fair hearing. This case differs from the line of cases dealing with allegations of bias in administrative proceedings in New Mexico, because those cases have each involved an aggrieved person alleging denial of a fair hearing by an arm of the state. *See, e.g., Santa Fe Exploration Co. v. Oil Conservation Comm'n,* 114 N.M. 103, 835 P.2d 819 (1992) (oil drillers appealed commission's decision to impose production restrictions based in part on possible commission member bias); *Lujan v. New Mexico State Police Bd.,* 100 N.M. 149, 667 P.2d 456 (1983) (state police employee appealed police board decision upholding his termination based on chairman's possible bias); *Reid v. New Mexico Bd. of Exam'rs in Optometry,* 92 N.M. 414, 589 P.2d 198 (1979) (optometrist appealed board revocation of his license based on possible board member bias). In these cases, New Mexico courts have used as their analytical starting point the constitutional right to due process. *Santa Fe Exploration Co.,* 114 N.M. at 109, 835 P.2d at 825; *Lujan,* 100 N.M. at 150, 667 P.2d at 457; *Reid,* 92 N.M. at 415–16, 589 P.2d at 199–200. The Due Process Clause of the Fourteenth Amendment guarantees that a person like Chavez with interests terminated by an arm of the state receive a fair, adjudicative-style hearing. *Reid,* 92 N.M. at 416, 589 P.2d at 200; *Board of Educ.,* 106 N.M. at 132, 740 P.2d at 126. The inquiry New Mexico courts have shaped to determine when a hearing is or is not fair due to bias is therefore designed for the purpose of protecting a person's constitutional right to a fair hearing.

12. The City, however, is considered an arm of the state, and not a "person," within the meaning of the Fourteenth Amendment. *See* U.S. Const. amend. XIV; *see also* John E. Nowak et al., *Constitutional Law* 415–16 (2d ed. 1983) ("persons" protected by fourteenth amendment consist of individuals, including aliens and corporations); *id.* at 415 (fourteenth amendment protects individuals by restricting power of states, and "all lesser governmental units such as county, city, or other local governments are considered to be a part of the state"). As such, the City has no constitutional right to due process, and therefore no constitutional right to a fair hearing.

13. However, the city is nonetheless guaranteed a fair hearing by statute. The MSO, in its terms and its structure, and the rules promulgated under it for the conduct of grievance hearings, are framed to protect both an aggrieved individual's due process rights and the City's strong public policy interest in a fair and expeditious process for terminating "problem" employees. The City is entitled to a fair hearing both to ensure the smooth functioning of government and to, as here, ensure that agents of the City do not violate the civil rights of other individuals. We hold that the same test applies whether an individual or the State claims to have been denied a fair hearing because of bias.

14. The City's MSO, adopted pursuant to NMSA 1978, Section 3–13–4 (Repl. Pamp.1995), is a comprehensive statutory scheme designed to insulate the grievance decision-maker from improper interference. *See* MSO § 3–1–23(A)(2) ("The purpose of the Grievance Resolution Procedure is to secure, in an atmosphere of courtesy and cooperation, a prompt and equitable resolution at the lowest possible administrative level of problems which may arise within the course of employment with the city."); MSO § 3–1–23(J) ("The entire grievance resolution procedure shall operate without discrimination, restraint, coercion or reprisal on the part of any supervisor or employee."). In addition, several provisions of the MSO are designed to ensure that the hearing officer not be subject to improper influence. *See, e.g.,* MSO § 3–1–25(E) ("No person shall attempt to influence a Personnel Hearing Officer's findings and conclusions pursuant to this ar-

ticle except when doing so openly during a hearing."); MSO § 3–1–25(D) ("A Personnel Hearing Officer shall not be actively involved in partisan political activities or the political affairs of the city."). Lastly, the operating rules for hearing officers promulgated under this scheme require the personnel hearing officer to be impartial. *See* Albuquerque, N.M., Personnel Board Rules of Procedure for Class I Grievance Hearings, Rule 9(N) (revised Jan. 10, 1995) ("The hearing officer shall not participate in any adjudicatory proceeding if, for any reason, the hearing officer cannot provide a fair and impartial hearing *to either party*.") (emphasis added); *see also id.* Rule 9(O) ("No person shall discuss the merits of any pending adjudicatory proceeding with the designated hearing officer ... unless both parties or their representatives are present."). A personnel hearing officer who is in fact impermissibly biased is in violation of the MSO and its rules. Therefore the alleged bias, if it exists, renders the ultimate grievance decision "arbitrary or capricious," and/or "otherwise illegal." *See* MSO § 3–1–23(D)(5)(a)–(c) (judicial review of Board decision appropriate where decision is arbitrary or capricious, otherwise illegal, or beyond its statutory authority); *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 123 N.M. 239, 245, n. 3, 938 P.2d 1384, 1390 n. 3 (Ct.App. 1996) (bias that would violate due process would also render resulting decision "arbitrary, capricious or an abuse of discretion").

### D. Objective Test for Bias

■ 15. We take this opportunity to clarify when a personnel hearing officer should disqualify himself or herself, or when a reviewing tribunal should order a disqualification for possible bias. Chavez argues that the mere appearance of bias, without more, is not a sufficient basis for disqualification of the hearing officer. Chavez also argues that because in this case the hearing officer concluded, and the City specifically failed to dispute, that the hearing officer could be fair, the city cannot show actual bias as a matter of law. The City argues that because the record reveals what a reasonable person would perceive as bias on the part of the hearing officer, he should have disqualified

himself, subjective beliefs aside. We agree with the City's position.

■ 16. In order to guarantee that the City receives a fair hearing, we hold that where a reasonable person would have serious doubts about whether the hearing officer could be fair, it is inappropriate for the hearing officer to hear the case. This "objective appearance of fairness" test originates with *Reid*, in which our Supreme Court stated:

> The inquiry is not whether the Board members are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average man [or woman] sitting as a judge to try the case with bias for or against any issue presented to him [or her].

92 N.M. at 416, 589 P.2d at 200. This "objective" test is referred to in a line of cases following *Reid*. *See, e.g., Santa Fe Exploration Co.*, 114 N.M. at 109, 835 P.2d at 825 (quoting the same language from *Reid*); *Varoz v. New Mexico Bd. of Podiatry*, 104 N.M. 454, 459, 722 P.2d 1176, 1181 (1986) (citing the test from *Reid* but noting that bias issue not preserved for appeal); *Lujan*, 100 N.M. at 150, 667 P.2d at 457 (citing the "appearance of bias" and "possible temptation to try the case with bias" standard from *Reid*); *Board of Educ.*, 106 N.M. at 132, 740 P.2d at 126 (citing to *Reid* test, although not reaching the bias issue). This standard is in essence a paraphrase of a federal statute governing the disqualification of judicial branch judges, *see* 28 U.S.C. § 455(a) (1994) (A judge "shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned."), as well as New Mexico's Code of Judicial Conduct dealing with disqualification of state judges, *see* NMRA 1997, 21–400(A) ("A judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned....").

17. Finally, we note that the Tenth Circuit recently held that personnel hearing officers who hear grievances under the City's MSO are entitled to absolute immunity from damages actions under 42 U.S.C. § 1983

(1994). *Saavedra v. City of Albuquerque,* 73 F.3d 1525 (10th Cir.1996). The Tenth Circuit based its holding on the fact that a hearing officer's "duties and the procedures employed are functionally comparable to those of a court of law." *Id.* at 1530. *Saavedra* and similar federal cases granting absolute immunity to administrative hearing officers are also illustrative of the important policy of protecting the city, like individuals, from impermissible hearing-officer bias. In *Saavedra,* the Tenth Circuit reasoned that administrative hearing officers are due immunity because "[t]he nature of the process is such that [a] terminated employee will often have a strong incentive to sue the [Personnel Hearing Officer] or the Board should either issue an adverse decision, and therefore a strong likelihood of lawsuits … might produce a hidden bias in favor of the aggrieved employee." *Id.* The Tenth Circuit held that this potential "hidden bias" constituted one of those "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." *Id.* at 1529 (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)). The same policy that led the court in *Saavedra* to grant immunity to hearing officers justifies our holding today.

18. We do not agree with Chavez that a party must show actual bias. An analysis of the hearing proceedings in this case illustrates why that standard is simply too difficult to meet. The City moved for the hearing officer's disqualification early in the hearing, arguing to the hearing officer that "the appearance of bias" was a sufficient basis for the hearing officer to disqualify himself, based on *Reid.* At this point in the proceedings the City had no way of knowing, much less proving, whether "actual" prejudice due to bias would result. If we were to adopt Chavez's argument and require the City at the hearing below to prove to the hearing officer that the hearing officer was actually biased, we would be essentially requiring the City, already in the unsavory position of attempting to persuade the factfinder that he was unsuited for the task, to convince the hearing officer he was wrong in his subjective opinion that he could be fair.

Alternatively, under Chavez's standard we might require the City to go through the entire hearing process and then on appeal attempt to prove "actual" bias resulted. In contrast, by adopting an "objective" test for bias, we provide both the hearing officer below and a reviewing court with a workable standard. Therefore we hold that the City, like an individual, can expect a hearing officer to disqualify himself or herself for bias when a reasonable person would have serious doubts about whether the hearing officer could be fair. This standard was met in this case, and the hearing officer should have disqualified himself.

## III. CONCLUSION

19. Based on the foregoing, we affirm the district court and remand for a fair hearing before another hearing officer.

20. IT IS SO ORDERED.

HARTZ, C.J., and WECHSLER, J., concur.

