1998-NMSC-033

965 P.2d 928

**CITY OF ALBUQUERQUE,
Plaintiff–Respondent,**

v.

**Ernest B. CHAVEZ, Defendant–
Petitioner.**

No. 24257.

Supreme Court of New Mexico.

Sept. 21, 1998.

Robert M. White, City Attorney, Charles W. Kolberg, Assistant City Attorney, Albuquerque, for Plaintiff–Respondent.

Roy A. Anuskewicz, Jr., Albuquerque, for Defendant–Petitioner.

*OPINION*

FRANCHINI, Chief Justice.

{1} Petitioner–Employee Ernest Chavez was terminated by the City of Albuquerque Fire Department (Department). A divided Court of Appeals reversed the district court order that had set aside the decision of the City of Albuquerque Personnel Board sustaining Chavez's termination. *City of Albuquerque v. Chavez*, 1997–NMCA–034, 123 N.M. 258, 939 P.2d 1066. The majority opinion of the Court of Appeals held that "due process was not violated by requiring Employee to present his evidence first or to bear the burden of production or persuasion in [post-termination] proceedings before the Hearing Officer." *Id.* ¶ 1. While the majority acknowledged the dissent's concern that certain " 'procedural irregularities at the pretermination proceeding had the effect of increasing, and not decreasing, the risk of error present at the post-termination hearing,' " *id.* ¶ 28, the majority did not address the alleged irregularities, concluding simply that Chavez "received all the process he was due." *Id.* ¶ 29. We granted certiorari, and, applying federal due process principles, we now reverse the Court of Appeals and reinstate the district court's ruling.

*FACTS AND PROCEDURAL POSTURE*

{2} At the time of his termination, Chavez was a section leader in the Fleet Maintenance Division of the Department. His primary responsibility was to ensure that the

Department had a ready fleet of vehicles 24 hours a day. Among his duties, he was in charge of procuring replacement parts, including tires, for Department vehicles.

{3} In early 1992, Chavez solicited a $250 donation from Dan Shine, an employee of a company that did business with the Department, to help cover a $300 shortfall in the budget for the Department's 1991 Christmas party. Deputy Chief Robert Otero of the Department had covered the shortfall with his personal credit card. The record is conflicting whether Otero approached Chavez and requested his assistance in securing reimbursement through donations from the public or whether Chavez offered such assistance himself. It is undisputed that Otero personally visited Shine's company and picked up the $250 contribution solicited by Chavez.

{4} Soon thereafter, Shine began to call Chavez repeatedly to request that he assist him in getting a discount on tires for Shine's personal vehicle through one of Chavez's City vendor contacts. Chavez arranged for Shine to pick up some tires on March 20, 1992 from a supplier to the City, and Shine did so without paying for the tires. The tire company called the Department to inquire about the transaction, and Chavez, who claimed he intended to pick up the invoice and pay for it out of his own pocket, instead sent a subordinate to retrieve it. The subordinate witnessed Chavez write a Department vehicle identification number on the invoice, thereby making it eligible for payment by the City. When an investigation revealed that the City vehicle identified on the invoice did not have the new tires, Chavez was charged with violating various Department and City rules.

{5} Chavez was notified of the pre-disciplinary hearing to be held in the matter on April 22, 1992, and he appeared on that date with his attorney. Otero was the hearing officer. Otero allowed Chavez to consult with his attorney throughout the hearing, but did not permit Chavez's attorney to make a record through questions of his client or Otero. Otero did not let Chavez's attorney address him at all on his client's behalf, except to give a few closing remarks promising to retrieve and submit Chavez's counsel-

ing records from the City's Employee Assistance Program. Chavez and his wife were the only witnesses who spoke at the hearing, and both, requesting mitigation, related that he was experiencing a number of severe personal problems at the time of the incident in question, including recovery from a recent heart attack, problems with his teenage daughters involving two suicide attempts, and other stress related to his family life and his work. Following the hearing, Otero recommended to the Chief of the Department that Chavez be terminated, and thereafter a letter of termination, effective April 30, 1992, was sent to Chavez.

{6} A post-termination hearing was held on July 23 and 28, 1992. Chavez was required to carry the burden of proof and present his evidence first. The hearing officer ultimately concluded that Chavez "failed his burden to demonstrate that there were adequate mitigating circumstances to condone the act or to lessen the discipline imposed" and recommended that the Personnel Board sustain the Fire Chief's decision to terminate Chavez. The Personnel Board voted 2–1 to sustain Chavez's termination. Chavez appealed to the district court, which, after a hearing, ordered the case remanded to the Personnel Board based on its conclusion that the hearing officer "improperly placed the burden of proof on appellant Ernest B. Chavez and required him to present his evidence first." The City sought to appeal this decision, but the Court of Appeals dismissed it on summary calendar for lack of a final order disposing of the merits of the underlying controversy.

{7} A second post-termination hearing was held on April 22 and 25, 1994. Pursuant to the district court's order, the City had the burden of proving it had just cause to terminate Chavez. The hearing officer determined that Chavez "did not *intentionally* make any entry on the public record[,] in this case the invoice[,] to deceive anyone." The hearing officer also found that, because "[i]t was Deputy Chief Otero who directly benefit[t]ed from the solicitation of donations which Chavez made with respect to [Shine's company,]" it was questionable "whether Deputy Chief Otero maintained an open mind

throughout the pre-determination hearing." After considering the disciplinary actions of the Department in other matters, including a verbal admonishment received by Otero for using a City vehicle for personal business, the hearing officer concluded that "[t]he discipline meted [out] to [Chavez] is disparate" and that "[j]ust cause to discharge [Chavez] was not present on April 30, 1992." The hearing officer recommended to the Personnel Board that Chavez, after a period of suspension for 30 working days, be reinstated. The Personnel Board voted 3–0 to accept the hearing officer's recommendation, but modified the suspension period to 90 days. The City appealed to the district court, which, after a hearing, entered an order on June 23, 1995 determining that this "second decision of the Personnel Board should stand as the proper decision" in this case.

{8}  After the City appealed both the district court's 1995 final order and its earlier order remanding the case back to the Personnel Board, the Court of Appeals, by majority decision, overturned the district court's initial order of remand, and we subsequently granted Chavez's petition for a writ of certiorari.

{9}  We granted Chavez's petition on the following issue:

Whether requiring Mr. Chavez, a tenured public employee, to prove by a preponderance of the evidence that there was no just cause to terminate his employment in post-termination proceedings before the Personnel Board of the City of Albuquerque violated his right to procedural due process under either Article II, Section 18 of the New Mexico Constitution or the Fourteenth Amendment to the United States Constitution[.]

Recognizing that "the constitutionality of post-termination process" must be evaluated "in light of the pre-termination procedures it follows[,]" *Benavidez v. City of Albuquerque,* 101 F.3d 620, 626 (10th Cir.1996) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)), the parties properly briefed and argued issues related to the circumstances of Chavez's pre-termination hearing, in addition to discussing the issue of the proper placement of the burden of proof in the post-termination proceedings.

*DISCUSSION*

{10}  The parties do not dispute that Chavez's employment with the City constitutes a property interest protected by the Due Process Clause of the Fourteenth Amendment. *See Lovato v. City of Albuquerque,* 106 N.M. 287, 289–90, 742 P.2d 499, 501–02 (1987) (recognizing classified city employee's constitutionally protected property interest in continued employment). Thus, we must determine whether the City afforded Chavez procedural safeguards adequate to protect his right to due process. *See Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487 ("The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.").

{11}  Chavez argues that the Board's initial decision sustaining his termination was not in accordance with law because he was not afforded due process in the pre-termination and initial post-termination proceedings. Specifically, Chavez argues that his right of due process was violated at the pre-termination hearing because Otero had a conflict of interest which should have precluded him from hearing the case and because Otero's action of "forbidding Petitioner's attorney from representing his client" at the hearing deprived Chavez of a meaningful opportunity to be heard. Additionally, Chavez urges that he was denied due process when he was required to bear the burden of proof at the first post-termination hearing.

{12}  Chavez does not argue that Article II, Section 18 of the New Mexico Constitution should be interpreted any more expansively than the Fourteenth Amendment to the United States Constitution. *See State v. Gomez,* 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (noting preservation requirements for assertion of a state constitutional right that has not been interpreted differently than its federal analog). Our analysis is therefore premised solely on federal due process principles.

{13} The Tenth Circuit recently considered the due process implications of requiring a public employee to bear the burden of proof in post-termination proceedings and concluded that "the question must be answered by applying the balancing test of *Mathews v. Eldridge*, [424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ]." *Benavidez*, 101 F.3d at 626. We, too, conclude that the *Mathews* test provides the appropriate framework for analysis of the burden of proof issue as it relates to the question of due process. *Cf. State v. Woodruff*, 1997–NMSC–061, ¶ 27, 124 N.M. 388, 951 P.2d 605 (noting that the *Mathews* test "provides a useful framework for determining the amount of process appropriate to protect a liberty or property interest as a matter of constitutional right"); *Board of Educ. v. Harrell*, 118 N.M. 470, 478, 882 P.2d 511, 519 (1994) (utilizing *Mathews* test to determine whether discharged school district superintendent was afforded due process).

■ {14} Under the *Mathews* test, identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; *second, the risk of an erroneous deprivation of such interest through the procedures used,* and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893 (emphasis added). In this case, as in *Benavidez*, the second factor—risk of an erroneous deprivation of public employment—is the focus of review. *See* 101 F.3d at 626–27; *see also Chavez*, 1997–NMCA–034, ¶¶ 55–61, 123 N.M. 258, 939 P.2d 1066 (Armijo, J., dissenting) (discussing "significant effect on the risk of error" in requiring Chavez to bear burden of proof). As we indicated above, assessing the risk of such error requires us to consider the pre- and post-termination proceedings as a whole. *See Benavidez*, 101 F.3d at 627 (stating that the outcome of the *Mathews* test in that case ultimately turned on the nature of the pre-termination protections afforded the discharged public employees and concluding that, "[c]ombined with the City's elaborate pre-termination proceedings, the post-termination hearings provided [the employees] with all the process they were due").

{15} Here, neither the pre-termination hearing before Otero nor the initial post-termination hearing served to apprise the Fire Chief or the Personnel Board of significant aspects of Chavez's mitigation defense. *See Loudermill*, 470 U.S. at 543 n. 8, 105 S.Ct. 1487 (discussing the importance of procedures sufficient to alert the decisionmaker of "arguments about cause and effect" so that his or her discretion will be "more informed" and "the risk of error substantially reduced") (quoting *Goss v. Lopez*, 419 U.S. 565, 583–584, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). At the pre-termination hearing, Otero did not permit Chavez's attorney to question him or Chavez or otherwise make a record of *either* the relation between the $250 solicitation made by Chavez and Otero's out-of-pocket expenses from the Christmas party *or* the allegedly similar disciplinary situation involving Otero himself. Nor did Otero's report to the Fire Chief recommending termination make any mention of these matters. *See id.* at 543, 105 S.Ct. 1487 ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect."). At the initial post-termination hearing, Chavez's attorney was able to bring these matters to the attention of the hearing officer, but the hearing officer's report to the Personnel Board failed to address either of them. *See Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir.1988) (discussing importance of post-termination proceeding in ferreting out bias and pretext in discharge of the employee). Under these circumstances, we do not think Chavez was afforded a fair opportunity to invoke the discretion of either the Fire Chief or the Personnel Board on the appropriateness or necessity of his discharge. *Cf. City of Albuquerque v. Joseph Chavez*, 1997–NMCA–054, ¶¶ 9–10, 123 N.M. 428, 941 P.2d 509 (refusing to accord deference to Personnel Board's

decision to terminate employee where employee's arguments of bias were left out of post-termination hearing officer's report to the Board). We conclude, moreover, that these circumstances, together with the requirement that Chavez shoulder the burden of proof in the initial post-termination hearing, created an impermissibly high risk that Chavez would be erroneously terminated from his employment. *Accord Benavidez*, 101 F.3d at 627 (concluding that the pre-termination procedures afforded in that case "tipp[ed] the balance" in favor of a determination that the discharged employees' due process rights were not violated when they were required to bear the burden of proof in post-termination proceedings).

{16} Considering the important private interest in public employment and the relatively low administrative burden on the City in requiring it to carry the burden of proof, *see Benavidez*, 101 F.3d at 626–27, we hold that the district court properly imposed the burden of proof on the City in the second post-termination hearing. We note that, as a point of logic, the district court's order requiring the City to bear the burden of proof did not necessarily guarantee that the Personnel Board would be made cognizant of Chavez's full mitigation defense, though that indeed was the result of the second post-termination hearing because the hearing officer included that information in his recommendation to the Board. This point, however, only serves to illustrate that our holding is a very narrow one with respect to the burden of proof: it is but one factor in our conclusion that Chavez was not afforded due process under the circumstances of this case. In this respect, we stress that, unlike the result reached by the Tenth Circuit in *Benavidez*, our conclusion here turns not simply on an evaluation of the risk of error in the locus of the burden of proof, but also on the risk of error occasioned by the fact that neither the pre-termination or initial post-termination procedures fully apprised the Fire Chief or the Personnel Board of Chavez's mitigation defense.

{17} In sum, we have not considered whether imposing the burden of proof on a public employee in post-termination proceed-ings is by itself enough to amount to a violation of federal due process. *See Lavine v. Milne*, 424 U.S. 577, 585, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976) (remarking that the burden of proof generally carries few constitutional implications in civil, as opposed to criminal, proceedings); *see also Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 480 S.E.2d 685, 689 (N.C.1997) (citing *Lavine* and concluding that federal due process did not require employer to bear burden of proof in termination hearing); *Sherris v. City of Portland*, 41 Or.App. 545, 599 P.2d 1188, 1193 (Ct.App.Or.1979) (same). That broader question is not presented for our review under the facts of this case, and we expressly decline to reach it. *See Doe v. Roman Catholic Church of the Archdiocese of Santa Fe, Inc.*, 1996–NMCA–094, ¶ 12, 122 N.M. 307, 924 P.2d 273 ("[C]ourts traditionally do not reach out to decide issues unnecessarily."). *Compare Patron v. City of Albuquerque*, 99 N.M. 331, 332, 657 P.2d 1180, 1181 (1983) (accepting as legitimate, where no challenge was made on constitutional grounds, statutory provision imposing burden of proof on terminated employee), *with Boespflug v. San Juan County (In re Termination of Boespflug)*, 114 N.M. 771, 776, 845 P.2d 865, 870 (Ct.App.1992) (stating that, "[w]hile it appears that the hearing officer erred by requiring petitioner to proceed first with his evidence, we are confident that this will not happen again on remand").

{18} The majority opinion of the Court of Appeals relied heavily on *Lavine* and the statement therein that "the locus of the burden of persuasion is *normally* not an issue of federal constitutional moment." 424 U.S. at 585, 96 S.Ct. 1010 (emphasis added); *see Chavez*, 1997–NMCA–034, ¶¶ 17, 23, 25, 27, 123 N.M. 258, 939 P.2d 1066. In our view, the qualifier "normally" makes clear that *Lavine* did not absolutely preclude the burden of proof issue from rising to the constitutional level on different facts than were presented in that case. The facts presented in this case are significantly different from those in *Lavine*. In *Lavine*, the Court held that a New York statute which required applicants for welfare benefits to prove their eligibility for such benefits—particularly that they had not left employment for the purpose of quali-

814

fying for benefits—was not violative of the federal Due Process Clause. 424 U.S. at 584 n. 9, 96 S.Ct. 1010. As the Tenth Circuit noted in *Benavidez:* "*Lavine* is distinguishable, however, in that it addresses who should bear the burden of proof prior to the conferral of a benefit ..., whereas the instant case involves deprivation of a benefit already conferred ." 101 F.3d at 625. We conclude that the facts of this case are outside the range of cases contemplated by the Supreme Court's statement in *Lavine.*

{19} In reaching its conclusion that placement of the burden of proof on Chavez did not rise to the level of constitutional error, the majority opinion of the Court of Appeals did not address the fact that neither the Fire Chief nor the Personnel Board were fully apprised of Chavez's mitigation defense. The majority gave little weight, if any, to the *Mathews* risk of error factor, instead citing *Loudermill* and concluding that Chavez had received "notice and an opportunity for a hearing appropriate to the nature of the case." *Chavez,* 1997-NMCA-034, ¶ 28, 123 N.M. 258, 939 P.2d 1066. As we have discussed, based on our reading of the importance ascribed in *Loudermill* to the ability of the terminated employee to invoke the discretion of the decisionmaker, *see* 470 U.S. at 543, 105 S.Ct. 1487, as well as *Benavidez's* recognition that the constitutionality of post-termination process must be evaluated "in light of the pre-termination procedures it follows[,]" 101 F.3d at 626, we reach a different conclusion.

*CONCLUSION*

{20} The procedures utilized in the pre-termination hearing and the initial post-termination hearing in this case created, in violation of federal due process standards, an impermissibly high risk that Chavez would be erroneously terminated. The decision of the Court of Appeals is therefore reversed. We note from the face of the City's docketing statement in the Court of Appeals, which is part of the record in this Court, that the City did not raise any issues related to the district court's affirmance of the Personnel Board's second decision suspending Chavez instead of terminating him. Thus, pursuant to that sec-

ond decision, Chavez is to be reinstated to his former position with the Department.

{21} **IT IS SO ORDERED.**

BACA, MINZNER, SERNA and McKINNON, JJ., concur.