The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>January 23, 2024</u>

**No. A-1-CA-39971**

**MANUEL GONZALES III, a**
**candidate for Mayor of Albuquerque,**

     Appellant-Respondent,

v.

**ETHAN WATSON, in his official**
**capacity as Albuquerque City Clerk,**

     Appellee-Petitioner.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Bryan Biedscheid, District Court Judge**

Harrison, Hart & Davis, LLC
Carter B. Harrison IV
Daniel J. Gallegos
Albuquerque, NM

for Respondent

Peifer, Hanson, Mullins & Baker, P.A.
Mark T. Baker
Matt M. Beck
Matthew E. Jackson
Albuquerque, NM

for Petitioner

# OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1}     This case presents an issue of first impression concerning the administration of the City of Albuquerque's (the City) public campaign financing ordinance. The City appeals from the district court's ruling that candidates have a due process right to a hearing before the City Clerk enters a decision denying them public financing. Concluding that a predecision hearing was not constitutionally required, and that the post-decision hearings provided here were sufficient, we reverse.

## BACKGROUND

{2}     Then Bernalillo County Sheriff Manny Gonzales III (Sheriff Gonzales) filed as a candidate in the City's 2021 mayoral election. As part of his filing, Sheriff Gonzales opted to apply for public financing[1] pursuant to City's Open and Ethical Elections Code (OEEC). Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI (2021, amended 2023).[2] On April 4, 2021, Sheriff Gonzales signed and delivered two forms required by the City as part of its public financing process. The first form was the "Candidate Acknowledgment of Familiarity with Codes and Required Disclosures" in which Sheriff Gonzales

---

[1]Sheriff Gonzales's actual declaration is not included in the record provided to this court.

[2]All references in this opinion to the Charter of the City of Albuquerque are to the 2021 version of the charter.

acknowledged that he was familiar with the City's Election Code, the rules and regulations of the Board of Ethics and Campaign Practices for the Election Code, the OOEC and the Code of Ethics of the Charter of the City, and the 2021 regulations promulgated by the City Clerk. The second form was the "Designation of Representatives" in which he agreed that he was "fully responsible for the statements made and materials submitted by [three listed] representatives on behalf of [his] campaign."

{3}     Sheriff Gonzales signed and filed his "Application for Certification as a Participating Candidate for the Office of Mayor" (the Application) on June 19, 2021. The Application required him to "swear or affirm" that he had complied with all requirements of the OEEC and had met all of the City's requirements with regard to raising qualifying contributions.

{4}     On July 9, 2021, the City Clerk denied the Application, citing two complaints he had received from an opposing candidate asserting improprieties on the part of Sheriff Gonzales's campaign in connection with its handling of qualifying contributions.

{5}     The first complaint—filed June 7, 2021—asserted that, at a meeting with Salvation Army Advisory Board members, Sheriff Gonzales personally solicited a five-dollar qualifying contribution from a person, asked the person to sign the qualifying contribution book, but then told the person, "we[ will] cover that," when

asked by the person if he "needed to give five dollars?" (the Salvation Army incident). Sheriff Gonzales signed the qualifying contribution book as the collecting representative. The complaint asserted that Sheriff Gonzales's actions were contrary to the OEEC Regulations that require that qualifying contributions be paid by the contributor and stipulates that if "funds are provided by any person other than the contributor who is listed on the receipt, the [q]ualifying [c]ontribution will be deemed fraudulent." *See 2021 Regulations of the Albuquerque City Clerk for the Open and Ethical Elections Code* (OEEC Regulations), Part C(6.), at 7-8, https://www.cabq.gov/vote/documents/2021-regulations-for-the-open-and-ethical-election-code.pdf. The complaint also asserted that Sheriff Gonzales's actions were contrary to other, more general provisions prohibiting campaign contributions by one person in the name of another person. NMSA 1978, § 1-19-34.3(A) (2019); OEEC Regulations, Part C(6.).

{6}     The City Clerk forwarded the complaint to Sheriff Gonzales on June 9, 2021, and notified him that the complaint had been referred to the Board of Ethics. The Board of Ethics—created in Article XII of the City's charter—is charged with receiving and investigating complaints regarding possible violations of the OEEC and rules promulgated by the "Board and/or City Clerk." Albuquerque, N.M., Charter of the City of Albuquerque, Code of Ethics, art. XII § 3(c).

{7}     The second complaint—filed on June 29, 2021—asserted that a number of the qualifying contribution receipts submitted by Sheriff Gonzales's campaign included forged contributor signatures. The City Clerk forwarded this complaint to Sheriff Gonzales on the same day he received the complaint, and again informed Sheriff Gonzales that this complaint had also been referred to the Board of Ethics.[3]

{8}     On July 11, 2021, Sheriff Gonzales appealed the City Clerk's July 9, 2021 denial of certification. On July 15, 2021, in accordance with the City's Charter, a City hearing officer (the Hearing Officer) held a full day hearing (the July 15 Hearing), during which Sheriff Gonzales and the City Clerk presented documentary evidence and live testimony through direct and cross-examination. *See* Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 18(B). Neither party makes any argument here that they were prevented from presenting any evidence or argument, or that the July 15 Hearing was otherwise inadequate. The parties submitted written closing arguments on July 16, 2021, and the Hearing Officer issued his ruling on July 18, 2021. The Hearing Officer upheld the City Clerk's decision, rejecting Sheriff Gonzales's arguments across the board. The Hearing Officer specifically noted that Sheriff Gonzales admitted that many of

---

[3] Though not referenced in the City Clerk's July 9, 2021 letter, another campaign submitted an additional 100 or so qualifying contribution receipts originally filed by the Sheriff's campaign that assertedly also included forged contributor signatures.

4

the signatures on the qualifying contribution receipts were forgeries. The Hearing Officer also found that the Salvation Army incident occurred as asserted in the June 7, 2021 complaint, and evidenced "direct knowledge of fraud and falsification" on the part of Sheriff Gonzales.

{9} Invoking Rule 1-074 NMRA, Sheriff Gonzales filed a notice of appeal from the City Clerk's decision in the district court on July 19, 2021. Sheriff Gonzales's statement of appellate issues included a number of arguments that the district court summarized into three primary issues: "(1) whether [the City Clerk's] certification denial decision was procedurally improper; (2) whether substantial evidence existed to warrant the certification denial decision; and[] (3) whether the regulations on which the certification denial decision was made were ultra vires."

{10} The district court concluded that the City Clerk "failed to provide [Sheriff] Gonzales with minimum due process protections before declining certification" and reversed the Hearing Officer's decision on that basis alone. As such, the district court did not address the other two issues. The district court concluded that the City Clerk "failed to: (a) notice [Sheriff] Gonzales that [he] intended on denying certification based upon OEEC Regulations, Part C, Section 15(a)(iii) and [](v); (b) provide [Sheriff] Gonzales with an adequate explanation of the evidence upon which [he] was considering denial; (c) provide [Sheriff] Gonzales with an adequate opportunity to be heard and present any pertinent claim or defense before [he] denied

certification." The district court remanded the case to the City Clerk to cure the due process violation it recognized. The district court gave the City Clerk three options: (1) find yet again that Sheriff Gonzales had violated the OEEC Regulations and deny certification again; (2) set forth a process by which Sheriff Gonzales would be provided "minimum procedural due process protections" within 72 hours from the date of its ruling; or (3) certify Sheriff Gonzales as a participating candidate entitled to public financing.

{11} The City Clerk chose the second option and sent Sheriff Gonzales a "Notice of Contemplated Action [R]egarding Certification for Public Finance" on August 30, 2021. The notice set a hearing for September 1, 2021, before the City Clerk (the September 1 Hearing). Sheriff Gonzales appeared for the September 1 Hearing with counsel, but did not participate substantively in that he did not present any testimony or submit any documentary evidence. Rather he used his time to protest the timing and structure of the September 1 Hearing asserting that it itself constituted a violation of his due process rights.

{12} The City Clerk entered his "Notice of Final Action [R]egarding Certification for Public Finance" on September 2, 2021, again denying certification. The notice included specific factual findings concerning forged qualifying contribution receipts. The notice also related that the Board of Ethics had found that Sheriff Gonzales "violated the OEEC and OEEC Regulations when [Sheriff Gonzales]

6

covered the contribution of Dean Zantow and submitted a qualifying contribution signed by him to the Clerk's Office."

{13} On the same day, Sheriff Gonzales filed a motion for rehearing with the district court requesting that it order the City Clerk to certify him for public financing. The motion argued that the original order entered by the court failed to adequately circumscribe the hearing on remand in that it did not address the need for an impartial decision maker—i.e., not the City Clerk—and also failed to describe the nature of the hearing to be held on remand. In essence, Sheriff Gonzales argued that the City Clerk should not have been allowed to be the decision maker and the hearing should not have been allowed to be structured as that which was held: effectively a *Loudermill* predetermination hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (holding that a public school employee who could be terminated only for cause was entitled to a pretermination hearing or "opportunity to present [their] side of the story").

{14} The district court entered its "Final Order Affirming [the City Clerk]'s Decision to Deny Public Funds" rejecting Sheriff Gonzales's arguments in toto. The City Clerk filed a petition for writ of certiorari asking the court to resolve "whether application for public campaign financing creates a constitutionally-protected property right in the public funds that entitles the applicant to the same panoply of special procedural protections required for governmental deprivations of an already-

vested property right." Sheriff Gonzales did not file a counter-petition for certiorari or otherwise appeal the district court's order. This Court granted certiorari.

**DISCUSSION**

{15}    The issue before us is narrow: what process—if any—is due to candidates seeking public campaign funds prior to the time the administrative authority decides whether a candidate will not be approved for funding? Applying the analysis articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) we conclude that a predecision hearing is not constitutionally required in this specific context. In so concluding, however, we do not follow the path laid in the parties' briefing.

{16}    The parties argue long and earnestly whether candidates have a property interest sufficient to support any process. Their arguments seem to assume that a finding that a property interest exists leads inexorably to a conclusion that a predecision hearing "of some kind" is constitutionally required. The district court seemingly shared this assumption in that it did not engage in the time honored analysis articulated in *Mathews*. Given the flexible and contextual nature of due process, that assumption is neither useful nor warranted. The United States Supreme Court has "never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment." *Lyng v. Payne*, 476 U.S. 926, 942 (1986) (citing *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 n.8

(1985)). But, at least as of 2005, every federal circuit that had addressed the issue had concluded that "applicants for benefits, no less than current benefits recipients, may possess a property interest in the receipt of public welfare entitlements." *Kapps v. Wing*, 404 F.3d 105, 115 (2nd Cir. 2005). There are no cases applying these concepts in the public campaign financing arena, and we see no reason to undertake the task to resolve this case. It would be more efficient and more utile to assume—without deciding—the City's candidates who have met the purely objective minimum requirements for participation in public financing have a sufficiently reasonable expectation of public financing to render them more than mere supplicants, thus implicating due process concerns. The discussion that follows is based on that assumption. The constitutionality of the procedures followed by a governmental entity presents a question of law, and, thus our review is de novo. *N.M Dep't of Workforce Sols. v. Garduño*, 2016-NMSC-002, ¶ 9, 363 P.3d 1176.

{17}     In *Mathews* the United States Supreme Court held that the concept of due process did not require the Social Security Administration to provide an evidentiary hearing prior to terminating a person's disability benefits. 424 U.S. at 349. The Court's canvass of the case law provides a concise summary of due process concepts applicable to governmental deprivations of property interests. *Id.* at 332-36. The most basic idea is that "some kind of hearing is required at some time before a person is finally deprived of [their] property." *Wolff v. McDonnell*, 418 U.S. 539, 557-58

(1974) (citing *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 165-66 (1951) (Frankfurter, J., concurring)). The requirement of a hearing serves the fundamental requirement of an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 551-52 (1965) (reversing a state court decree confirming a prior adoption procedure of which petitioner had admittedly never been provided notice). The different outcomes in cases such as *Goldberg v. Kelly*, 397 U.S. 254 (1970)—requiring a hearing approximating a judicial proceeding before terminating welfare benefits—and *Arnett v. Kennedy*, 416 U.S. 134 (1974)—approving a more informal process of notice and an opportunity for written and oral responses in federal employee dismissals—prompted the Court to note "the truism that due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 334 (alteration, internal quotation marks, and citation omitted). "[D]ue process is flexible[] and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In sum, flexibility "is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id.*

{18} New Mexico has long recognized that "[t]he *Mathews* test is the appropriate analytical framework for a due process issue." *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 31, 137 N.M. 161, 108 P.3d 1019; *City*

*of Albuquerque v. Chavez*, 1998-NMSC-033, ¶ 13, 125 N.M. 809, 965 P.2d 928. *Mathews* distilled three factors that courts should generally consider: (1) "the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 321. In assessing the second factor, we are to consider the administrative proceedings as a whole. *Garduño*, 2016-NMSC-002, ¶ 11; *see Chavez*, 1998-NMSC-033, ¶ 14 (same).

{19}     The City's process for handling complaints of violations of the OEEC is described in Section 4 of the Rules and Regulations of the Board of Ethics & Campaign Practices for the Election Code, the Open and Ethical Election Code, and the Code of Ethics of the City Charter. *City of Albuquerque Office of the City Clerk, Rules and Regulations of the Board of Ethics & Campaign Practices for the Election Code, the Open and Ethical Election Code, and the Code of Ethics of the City Charter* (*Board of Ethics and Campaign Practices Regulations*), § 4 *Enforcement*, at 4, https://www.cabq.gov/clerk/documents/proposed-boe-rules-2020.pdf. Complaints in the form of a "notarized statement attesting to the truth of its contents" are required to be filed with the City Clerk on a form approved by the Clerk. *Bd. of*

11

*Ethics & Campaign Practices Reguls.*, § 4(A)(1), at 4. The regulation provides detailed requirements for the content of the complaint, including the name and address of the complainant, the nature of the asserted violation, the names and contact information of persons who have personal knowledge of the allegations, and any evidence supporting the allegations. *Bd. of Ethics & Campaign Practices Reguls.*, §§ 4(A)(2)(a)(i), (v), (vi), at 4-5. Upon review by the City Clerk and their finding that it meets the requirements of the regulation, the regulation requires that the City Clerk "immediately' notify the [r]espondent and provide the [r]espondent a copy of the complaint using the best means practicable." *Bd. of Ethics & Campaign Practices Reguls.*, § 4(A)(5), at 5. The City Clerk is also required to simultaneously refer the complaint to the Board of Ethics and set the complaint for an evidentiary hearing by the Board of Ethics. *Bd. of Ethics & Campaign Practices Reguls.*, §§ 4(A)(3), (5), (6), at 5. Section 4(E) of the Board of Ethic's regulations include detailed instructions for the Board of Ethic's hearings that provide for a robust adversarial process. *Bd. of Ethics & Campaign Practices Reguls.*, § 4(E), at 7-10. The Board of Ethics can request an investigation of complaints. *See* Albuquerque, N.M., Charter of the City of Albuquerque, Code of Ethics, art. XII, § 9(a).

{20}     As noted above, the City Clerk received complaints on June 7 and June 29, 2021 asserting violations of the OEEC by Sheriff Gonzales personally and by his campaign. The record before us does not include details of the hearings conducted

12

by the Board as a result of the complaints. The record does indicate that after a hearing the Board upheld the June 7 complaint concerning the Salvation Army incident. Sheriff Gonzales has never argued that the Board of Ethic's process was improper or inadequate.

{21} The OEEC and associated regulations do not include any provision for a predetermination process in connection with the City Clerk's decision to deny certification as a participating candidate. Rather, the OEEC provides for an expedited appeal process. Section 19 of the OEEC allows a candidate to file an appeal of a decision to deny within three days. Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 19. Within five days of the notice of appeal the "City [h]earing [o]fficer shall hold a hearing, [and] the City [h]earing [o]fficer shall rule on the appeal within three days after the completion of the hearing." Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 19(B)(2). As noted above, this process was followed and resulted in a ruling upholding the City Clerk's decision. Sheriff Gonzales has never argued that he was not given a full and fair opportunity to present witnesses and evidence or otherwise make his evidentiary and legal arguments to the Hearing Officer or that the Hearing Officer was not a neutral decision maker. Sheriff Gonzales argued below that there was not substantial evidence to support the

Hearing Officer's ruling and that he applied an improper standard of proof, but those issues are not before us.

{22} We now turn to the *Mathews* factors. The first factor assesses the private interests affected by the official's action. *Mathews*, 424 U.S. at 321. This case does not involve the type of individual interest involved in *Mathews* and cases such as *Goldberg*, 397 U.S. at 255 (welfare benefits) or *Loudermill*, 470 U.S. at 535 (public employment). *Goldberg* and *Loudermill* address situations in which a deprivation of public benefits have potentially immediate and devastating effects on the lives and wellbeing of individuals and their families. In that context, the courts have been understandably willing to intrude on and impose limitations on governmental discretion.

{23} The interest here is no doubt important, but of a different order. The stated aim of public financing of campaigns is to reduce undue influence by large donors, ease the public perception of corruption, strengthen public confidence in government and provide well qualified candidates the financial wherewithal to run effective campaigns. Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI., § 2. These are worthy goals, but they do not involve the potential for personal harm that motivated the holdings in *Goldberg*, *Loudermill*, and similar cases. And, as our Supreme Court noted in *Montoya v. Herrera*, the decision to pursue public financing is a voluntary choice. 2012-NMSC-

14

011, ¶ 18, 276 P.3d 952, ¶¶ 17-19 (affirming denial of public financing where the candidate personally exceeded seed money limitations and holding that the limit did not constitute a burden on the candidates' First Amendment rights). Having chosen to seek public financing, the candidate is subject to the substantive requirements of the program, but failure to qualify does not necessarily result in the death knell of a campaign, much less the potential personal privation inherent in the loss of welfare benefits, unemployment compensation, and job security. In short, the initial denial of certification here does not evoke a need for the sort of predecision check on administrative action that loss of basic life benefits does.

{24}    The second *Mathews* factor involves assessment of the risk of erroneous deprivation of an interest and the probable value of additional procedures. *Mathews*, 424 U.S. at 321. Discussion of this factor is clouded in this case by Sheriff Gonzales's approach to the issue and the district court's response thereto. In his statement of appellate issues in the district court, Sheriff Gonzales asserted that he was due not just some predecision opportunity to present his side of the story as contemplated by *Loudermill*, 470 U.S. at 546, but a full on adversarial hearing as described in *Board of Education of Carlsbad Municipal Schools. v. Harrell*, 1994-NMSC-096, ¶ 25, 118 N.M. 470, 882 P.2d 511. Without explicitly saying so, the district court rejected the argument and remanded the matter for the City Clerk to provide the type of opportunity for dialogue that *Loudermill* and its progeny require.

In the final order affirming the City Clerk's decision to deny public funds, the district court explicitly explained that he had framed his prior order on the concepts of pretermination due process explained in *Loudermill*. It also noted the basic problem posed by Sheriff Gonzales's arguments: "The [c]ourt notes that [Sheriff] Gonzales has wanted two things throughout this proceeding: (a) nearly instantaneous decision-making, and (b) the most elaborate trappings of full criminal prosecution. These are mutual[ly] exclusive concepts." We agree with this observation.

{25}     The question yet remains whether any type of predecision process is required in this context as a check on potential error. We conclude that none is required for two reasons. First, Sheriff Gonzales was made fully aware of the complaints upon which the City Clerk based his initial decision. Both of the complaints were immediately referred to the Board of Ethics and that process was ongoing when the City Clerk entered his denial. We fail to see how "some kind of hearing" with the City Clerk outside of the Board process would aid in avoiding error or further the search for accuracy as to the allegations in the complaints.

{26}     Second, the City provides a very prompt avenue for checking the accuracy of complaints and the City Clerk's action through its appeal process. Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 19. The appeal process is robust and quick. Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 19. It allows

a hearing with a full opportunity to produce evidence, call and cross-examine witnesses and argue the facts and the law to as neutral a decision maker as can be mustered in that time frame—all within eleven days. Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 19. The potential torpidity of the administrative review process is an important factor in assessing the impact of official action on private interests. *Mathews*, 424 U.S. at 342 (citing *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975)). That factor is not at play here. We conclude that the robust and rapid post-decision process made available by the City was sufficient to adequately protect Sheriff Gonzales's interests.

{27}     The third *Mathews* factor assesses the governmental interests at work, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail. The City Clerk is placed on a tight schedule to approve requests for certification. The office is required to check all requests for certification within twenty days of receipt. Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 7(A). Section 7 of the OEEC requires the office to "determine whether the [a]pplicant [c]andidate has:

>     (1)     signed and filed a declaration of intent to obtain fund revenue;

>     (2)     submitted the appropriate number of [q]ualifying [c]ontributions;

17

(3)     qualified as a candidate pursuant to other applicable [c]ity and [s]tate election law;

(4)     complied with [s]eed [m]oney contribution and [e]xpenditure restrictions;

(5)     otherwise met the requirements for obtaining financing pursuant to the [OEEC];

(6)     otherwise met any additional criteria for certification set forth in rules by the [c]lerk;

(7)     been qualified as a [c]andidate by the [c]ounty [c]lerk; and

(8)     there are not pending challenges to the [c]ounty [c]lerk's qualification of the [c]andidate.

Albuquerque, N.M., Charter of the City of Albuquerque, Open and Ethical Elections Code, art. XVI, § 7.

{28}     We take Sheriff Gonzales at his word that he prefers what would amount to a full trial proceeding in advance of the City Clerk arriving at decision related to his qualification for public finance. The implications for the schedule of approval and the administrative disruption and expense are obvious. This factor weighs in favor of our conclusion that the quick appeal process described above is the process City candidates are due.

{29}     To sum up, assuming a property interest indeed exists regarding access to public financing under the OEEC, the process available to swiftly and fully challenge an adverse determination in the days after such a decision is made comports with due process. We perceive no need for any additional predetermination

18

opportunity by which Sheriff Gonzales could have challenged the future adverse decision regarding his qualification for public financing.

**CONCLUSION**

{30} For the reasons stated, we reverse the district court's decision that the City's candidates seeking public campaign funding are entitled to a predecision hearing with the City Clerk. We affirm the district court's judgment affirming the City Clerk's decision denying Sheriff Gonzales's certification as a participating candidate.

{31} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation.**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**JANE B. YOHALEM, Judge**

19