2001-NMCA-042

28 P.3d 531

**Pablo FRANCO, Plaintiff–Appellee,**

**v.**

**CARLSBAD MUNICIPAL SCHOOLS, Defendants–Appellants.**

**No. 20,128.**

Court of Appeals of New Mexico.

May 16, 2001.

J. Robert Beauvais, J. Robert Beauvais, P.A., Ruidoso, NM, for Appellee.

Thomas L. Marek, Matthew T. Byers, Marek, Francis & Byers, P.A., Carlsbad, NM, for Appellants.

## OPINION

ARMIJO, Judge.

{1} The opinion filed on November 22, 2000 is withdrawn and the following is substituted in its place. The motion for rehearing is otherwise denied.

{2} Carlsbad Municipal Schools (District) appeals from a judgment in favor of Pablo Franco (Franco) awarding him damages of $49,548 plus interest in his suit for wrongful termination of employment. The issues in this appeal can be summarized as follows: (1) whether the trial court erred in allowing the cause of action to go forward because Franco failed to exhaust his administrative remedies; (2) whether the determination that Franco did not receive due process of law is supported by substantial evidence; (3) whether the trial court's findings relating to the merits of Franco's termination as they relate to his job performance are supported by substantial evidence; and (4) whether the trial

court erred in awarding interest on the judgment.

{3} We affirm the trial court's judgment as to the damages awarded. We reverse, however, the trial court's award of post-judgment interest against the District.

## BACKGROUND

{4} Franco was first employed by the District as a custodian in 1991 and continued his employment with the District until he was terminated in August 1996. He received competent or satisfactory performance evaluations and was recommended for rehire at the end of each school year since 1991–92. Notwithstanding the satisfactory performance evaluations, there was evidence of problems he encountered at work.

{5} During the summer of 1996, the District participated in a summer youth work program sponsored by the New Mexico Department of Labor. This program placed qualified students in employment positions with the District. During this time, Franco worked with two summer youth employees, Michelle R., age 14, and Lupe L., age 20. There were occasions when the two young women and Franco talked about matters of a sexual nature. In July 1996, a verbal exchange occurred between Michelle R. and Franco after which he remarked about her menstrual cycle. Franco testified that he immediately apologized for the statement.

{6} After being informed of this incident, a representative from the Department of Labor contacted Eddie Rodriguez, supervisor of custodial maintenance for the District and informed him of the incident involving Franco and Michelle R. Rodriguez, in turn, contacted Charlotte Neill, assistant superintendent of personnel for the District. Neill directed Rodriguez to interview Franco, which he did on July 17, 1996. On August 2, 1996, Neill interviewed Michelle R. regarding the incident. Neill testified that she believed Franco's conduct was in violation of the alleged growth plan the District had prescribed for him, and that she should recommend his termination to the Board of Education (Board). She prepared a written list setting forth the problems she believed the school had with Franco and therein recommended termination. A copy was not given to Franco. However, on August 6, 1996, Franco was served with written notice placing him on administrative leave. He signed the notice, acknowledging its receipt on that date. At that same time, Rodriguez confiscated the District's keys and directed Franco to leave school property. The written notice given to Franco stated that his termination would be recommended to the Board that day, August 6. Rodriguez did not inform him that the Board was scheduled to meet in special session that evening to consider his termination. Franco was not informed that he could attend the meeting and provide the Board with details supporting his version of what had occurred. A copy of NMSA 1978, § 22–10–14 (1994), which defines the procedures for terminating non-certified school employees, was attached to the notice.

{7} Two days later, on August 8, 1996, Franco received notice that he had been terminated and was asked to come to the District's administration office in order to finalize the paperwork. He complied and met with Rodriguez, superintendent Don Fisher, and union representative Mike Waldrop. Though the union no longer represented District custodial employees, Franco spoke to Waldrop about handling a grievance. After returning home, Franco's wife composed a letter which sought an explanation of the reasons for his termination. Franco and his wife telephoned Rodriguez and asked him where the letter should be sent. Rodriguez responded that since Franco had already been terminated, there was nothing further he could do. As a result, the letter was never sent.

{8} On August 30, 1996, Franco filed a grievance through the union. The District responded that it had no contract with the union for such representation and dismissed the grievance. Franco filed his complaint for damages approximately one year later. At the conclusion of the trial, the trial court found that Franco was functionally illiterate and could not read the statute attached to the notice of termination. It also found that he was never informed in any manner that he could appear at the Board meeting at which

his termination would be considered. The trial court concluded that the foregoing facts deprived Franco of both pre-termination and post-termination due process of law, and it awarded damages in the form of both back pay and front pay. It is uncontested that Franco was a tenured, non-certified school employee as defined by Section 22–10–14 at the time he was terminated.

## DISCUSSION

{9} In reviewing challenges to a trial court's findings and conclusions, we view the facts underlying the trial court's decision in the light most favorable to the prevailing party and disregard all evidence and inferences to the contrary, unless they are determined to be clearly erroneous or deficient. *See Levenson v. Haynes,* 1997–NMCA–020, ¶ 13, 123 N.M. 106, 934 P.2d 300. Challenges to a trial court's conclusions of law are viewed de novo. *See id.* In conducting our review, we do not pass on the weight of the evidence or credibility of witnesses. *See Samora v. Bradford,* 81 N.M. 205, 207, 465 P.2d 88, 90 (Ct.App.1970).

1. *Franco was not required to exhaust his administrative remedies because the District's actions deprived him of due process.*

{10} Citing *Shepard v. Board of Education,* 81 N.M. 585, 587, 470 P.2d 306, 308 (1970), *Sanchez v. Board of Education,* 68 N.M. 440, 441, 362 P.2d 979, 980 (1961), and *Quintana v. State Board of Education,* 81 N.M. 671, 672, 472 P.2d 385, 386 (Ct.App. 1970), the District contends that Franco was required to exhaust the administrative remedies provided in NMSA 1978, §§ 22–10–14 and 22–10–14.1 (1994) before seeking relief in the district court. In our view, however, these authorities lend little support to the District's contentions on appeal. The problem in this case, which the District overlooks, is that the District's own actions, whether by design or through inadvertence, thwarted Franco's abilities to invoke and thus exhaust his administrative remedies and, as will be addressed below, amounted to violations of due process of law in themselves. The pertinent administrative remedies can be summa-

rized as follows: Section 22–10–14(C) allows tenured, non-certified school employees to request an opportunity to make a statement to the local school board by submitting a request in writing, and it further requires the school to provide written reasons for the notice of termination within five days of the employee's request for a meeting. Section 22–10–14(E) and (F) provide that the employee may respond to the written reasons by stating contentions in writing, which shall then be heard by the board within fifteen days. Section 22–10–14.1 provides for an appeal by the employee to an independent arbitrator in the event that the procedures contemplated in Section 22–10–14 fail to satisfy the employee.

{11} We examine the pre-termination and post-termination process that was afforded Franco by the District in determining whether he was afforded the process that was required. Our Supreme Court recently approved application of the balancing test announced in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as providing a useful framework for determining the amount of process appropriate to protect a liberty or property interest as a matter of constitutional right. *See City of Albuquerque v. Chavez,* 1998–NMSC–033, ¶ 13, 125 N.M. 809, 965 P.2d 928.

{12} Under the *Mathews* test,

"identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; *second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;* and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Chavez,* 1998–NMSC–033, ¶ 14, 125 N.M. 809, 965 P.2d 928 (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. 893) (additional emphasis added). The private interest at stake is Franco's expectation of continued employment. The second factor—risk of an erroneous deprivation of public employment—thus

becomes the focus of our review. Assessing the risk of such error requires us to consider the pre- and post-termination proceedings as a whole. *See id.*

{13} Among the findings made by the trial court were the following: (1) The District did not have an employee personnel manual, which explained its policies and procedures; (2) Franco was never given copies of the statements collected during the District's investigation of his conduct or of the August 2, 1996, memorandum by Rodriguez, which summarized the evidence against Franco and recommended his termination; (3) Franco was not told by Rodriguez that the Board was scheduled to meet on the evening of August 6 to consider his termination; and (4) after Franco was served with the termination notice, he prepared a letter requesting the reasons for the termination, but did not send it because he was told by Rodriguez that there was nothing he could do. Each of these factual findings, except No. 3 above, are uncontested by the District and are therefore binding on this Court. *See Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991).

{14} The District contends that the documentary evidence consisting of the August 5, 1996, suspension notice informed Franco of the planned August 6, 1996, Board meeting to consider his termination. Our reading of the notice indicates, however, that though it states that Franco's termination would be recommended to the Board on August 6, 1996, the notice does not state the manner in which the recommendation would be made. The notice does not state that the Board would meet in special session that evening, at a time certain, to consider the termination. We determine that substantial evidence supports the trial court's finding that Franco was not appropriately informed of the August 6, 1996, Board meeting.

{15} We next address the District's contention that because Franco had some assistance from a union representative, he should have known of his right to request a hearing before the Board or demand arbitration. The District places emphasis on the testimony of Neill, indicating that she told Waldrop, the union representative, to assist Franco in understanding his rights. Neill's concern with Franco's need to understand his rights was well placed. Neill testified that Franco had a third or fourth grade reading ability, and she did not believe he understood the termination process or the statute. She did not believe that he could read the statute with any degree of comprehension. The fact that Franco sought assistance from the union demonstrates his interest in contesting his termination. There was no evidence presented that Waldrop either knew of, or informed Franco of, the administrative process that was required in order to contest the merits of Franco's termination, or that Neill ever followed up on whether Waldrop actually assisted him. Additionally, the District concedes that it knew that the union had no contract to represent Franco or any other custodian. In fact, the District ultimately dismissed Franco's grievance without reaching the merits. Under these circumstances, the District's own procedures successfully thwarted any possible effort by Franco to utilize available administrative procedures. Therefore, we cannot hold, under the facts of this case, that Franco was required to engage in procedures that the District, or its representatives, told him were unavailable.

{16} The District further argues that neither Section 22–10–14 nor Section 22–10–14.1 requires that the District give an employee in Franco's position a more complete explanation of the termination procedure other than giving him a copy of the statute. It relies on *Daddow v. Carlsbad Municipal School District,* 120 N.M. 97, 106, 898 P.2d 1235, 1244 (1995) (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)), for the proposition that due process requires " 'oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present the employee's side of the story.' " The District contends that the statutory procedures available to Franco provided that process and, in addition, Franco could have had a post-termination hearing had he so requested. *Cf. In re Termination of Boespflug,* 114 N.M. 771, 774, 845 P.2d 865, 868 (Ct.App.1992) (indicating that the existence of post-termination procedures and

proceedings is relevant to assess the necessary scope of pre-termination procedures). Therefore, it asserts that it gave Franco all of the notice and opportunity to respond that was required.

{17} We reject this reasoning. The question is not whether the District would have afforded Franco a hearing as mandated by Section 22–10–14, or arbitration under Section 22–10–14.1, had he requested it. Rather, it is whether the actions of the District, through its representatives, thwarted the ability of Franco to avail himself of the rights accorded by statute. The inconsistent, conflicting, and incomplete message imparted to Franco decreased the likelihood he would appear at a hearing, either with or without counsel, to explain his side of the story. This, in turn, increased the likelihood that the District would make a critical decision affecting Franco's livelihood based on erroneous assumptions and half-truths. Nor are we persuaded by the District's contention that since it terminated Franco only after it conducted an investigation, there could be no risk of erroneous deprivation. Here again, the District confuses the question of whether it could sustain the grounds for Franco's termination with the process that it was required to provide him in the first instance.

■ {18} Constitutional due process and our legislative response in Section 22–10–14 is designed to bring out the whole truth and, simultaneously, protect the rights of the parties. The District's process, in regard to Franco, appeared to pay lip service to process while it lost sight of the very core value that the process is designed to protect. Accordingly, we hold that "the risk of an erroneous deprivation of [Franco's] interest through the procedures used" was sufficiently grave, in light of the process actually employed, that Franco's due process rights were violated. Chavez, 1998–NMSC–033, ¶ 14, 125 N.M. 809, 965 P.2d 928 (internal citation and quotations omitted). We conclude, as did our Supreme Court, in Chavez, that "[u]nder these circumstances, we do not think [Franco] was afforded a fair opportunity to invoke the discretion of the [the Board]" and, for that reason, those circumstances "created an impermissibly high risk

that [Franco] would be erroneously terminated from his employment." Chavez, 1998–NMSC–033, ¶ 15, 125 N.M. 809, 965 P.2d 928.

{19} Finally, we address the third prong of the Mathews test: the District's governmental interest. The District argues that it had a significant interest in immediately terminating Franco. Assuming, without deciding, the District's compelling interest in immediate termination, we know of no reason why that interest could not accommodate Franco's entitlement to procedural due process. The District, in effect, afforded Franco little or no process prior to or after his termination. For example, it could have informed him of the date of the Board meeting, provided him with a copy of the termination recommendation, and allowed him sufficient time pursuant to Section 22–10–14(C) to request an opportunity to address the Board before it voted to terminate him. The District could have suspended Franco temporarily, thus removing him from further contact with students and still have respected his procedural rights to notice and an opportunity to be heard.

■ {20} Actions to terminate constitutionally protected rights must be conducted with scrupulous fairness. See, e.g., In re Ronald A., 110 N.M. 454, 455, 797 P.2d 243, 244 (1990). Such was not the case in the matter before us. Franco was terminated by the District without being afforded the mandatory pre-termination or post-termination process to which he was entitled. Exhaustion of administrative remedies, as a precursor to Franco's suit for damages, was not required because the District, by its actions, deprived Franco of his right to initiate and sustain the administrative process mandated by statute—a process which would have provided him with a meaningful opportunity to challenge the grounds for termination.

2. *Challenges to the court's findings of fact.*

■ {21} We first note that the District does not object to the type, amount, or measure of damages awarded and, thus, it waives any challenge thereto. See Woolwine v. Furr's, Inc., 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987); see also Hanson v. Madison Serv. Corp., 150 Wis.2d 828, 443 N.W.2d

315, 323 (Ct.App.1989) (holding that employee waived appeal from exclusion of back pay in trial court's judgment by failing to object to the exclusion in the verdict and instruction forms). Nor did the District raise any issue in the trial court concerning damages in the event a due process violation was found. Rather, the District challenges certain findings and contends that the damage award cannot be sustained because those findings are unsupported by the evidence. We limit our discussion to that unadorned, sufficiency-of-the-evidence claim because the questions of how much and what type of damages can be awarded for violations of procedural due process were not briefed at all by the parties and are the subject of conflicting opinions in other jurisdictions. *Compare Hogue v. Clinton,* 791 F.2d 1318, 1328–29 (8th Cir.1986) (Lay, C.J., concurring in part and dissenting in part) (opining that *Loudermill* requires award of back pay until a proper hearing is held) *with Derstein v. Benson,* 714 F.Supp. 481, 498 (D.Kan.1989), *rev'd on other grounds,* 915 F.2d 1410 (10th Cir.1990) (indicating that consequential damages for deprivations of due process may only be awarded when the termination of employment was unjustified, thereby, implicating the merits of the termination decision in these cases), *and Patterson v. Personnel Bd.,* 672 So.2d 1118, 1120 (La.Ct.App.1996) (holding, without analysis, that public employee terminated without due process was never legally terminated and is entitled to all back pay less set-offs).

{22} The District challenges the following findings made by the trial court:

17. There was no reliable substantiation that the principal who had recommended termination of Franco established a 90 day growth plan on or about May 14, 1996.

18. The evidence is contradictory Franco was on a 90 day growth plan as of May, 1996.

. . . .

21. The sexual harassment incident was used as a pretext to terminate Franco after he had received satisfactory performance evaluations in March and April, 1996.

. . . .

35. The August 2, 1996, Memorandum by Supervisor Rodriguez summarizing his investigation of the sexual harassment allegations against Franco and his prior personnel problems and a recommendation of termination constituted the evidence against Franco, which served as the basis for his termination.

. . . .

37. Franco was not afforded an opportunity to confront his accusers regarding the sexual harassment allegations before he was terminated.

. . . .

39. No representative of the Carlsbad Municipal School District explained to Franco he had a right to meet with the Carlsbad School Board regarding his termination.

40. Franco was not afforded a constitutionally valid pre-termination hearing in front of a neutral fact-finder, and received no post-termination due process as a result of incorrect information regarding his remedies conveyed by [ ] Supervisor Rodriguez.

The substance of Findings 37, 39, and 40, and the court's refusal to find that Franco was accompanied by a union representative on August 8, 1996, have been addressed previously in this opinion. The court's rulings as to these matters are supported by substantial evidence and indeed formed the heart of the trial court's conclusions, which were limited to the absence of due process and the amount of damages.

{23} Because the trial court's conclusions were limited to and addressed the absence of due process and the amount of damages awarded thereon, we need not address Findings 17, 18, 21, and 35 which speak to the merits of Franco's job performance. Our function on appeal is to correct erroneous results, not to correct errors that, even if corrected, would not change the result. *See Sheraden v. Black,* 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988). We conclude that the District has failed to demonstrate on appeal how these findings, even if erroneous, affected the judgment, which was predicated

on the conclusions concerning an absence of due process which, in turn, were predicated on findings that we have upheld.

### 3. *Franco is not entitled to an award of post-judgment interest.*

{24} The trial court awarded interest on the judgment. We apply a de novo review to challenges to a trial court's conclusions of law. *See Levenson,* 1997–NMCA–020, ¶ 13, 123 N.M. 106, 934 P.2d 300.

{25} In support of its argument objecting to the award of interest, the District cites *Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 46, 125 N.M. 721, 965 P.2d 305, for the proposition that an award of post-judgment interest violates NMSA 1978, § 56–8–4(D) (1993). Section 56–8–4(D) provides that "[t]he state and its political subdivisions are exempt from the provisions of this section [allowing post-judgment interest] except as otherwise provided by statute or common law." We agree with the District that no statute expressly authorizes imposition of post-judgment interest against a school district. *See Daddow,* 120 N.M. at 104–06, 898 P.2d at 1242–44;—*Trujillo,* 1998–NMSC–031, ¶ 47, 125 N.M. 721, 965 P.2d 305. Absent express authority for such an award, we determine that Section 56–8–4(D) prohibits an award of post-judgment interest against the District.

### CONCLUSION

{26} We affirm the trial court's judgment. We reverse and vacate only the award of post-judgment interest against the District.

{27} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, LYNN PICKARD, Judge.