**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-048

Filing Date: February 19, 2013

Docket No. 31,711


LA VIDA LLENA,

      Protestant-Appellee,

v.

KAREN L. MONTOYA,
BERNALILLO COUNTY ASSESSOR,
BERNALILLO COUNTY VALUATION
PROTEST BOARD,

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Carl J. Butkus, District Judge

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Zachary L. McCormick
Albuquerque, NM

for Appellee

Randy M. Autio, Bernalillo County Attorney
Eric W. Schuler, Assistant County Attorney
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}** Appellant Karen Montoya, Bernalillo County Assessor (the Assessor), appeals from the district court's order reversing the Bernalillo County Valuation Protest Board's (the Board) determination that Appellee La Vida Llena is not entitled to a charitable exemption

1

from property tax. On appeal, we consider whether the property tax exemption for a continuing care facility that donates or renders gratuitously a portion of its facilities or services for charitable purposes found in NMSA 1978, Section 7-36-7(B)(1)(d) (2008) requires the continuing care facility to donate or to render gratuitously a minimum threshold amount in order to qualify for the exemption. We hold that (1) Section 7-36-7(B)(1)(d) does not require a minimum threshold amount of donated or gratuitously rendered services or facilities for charitable purposes in order for the continuing care facility to receive the property tax exemption, and (2) the district court did not err by failing to give deference to certain findings of the Board. Accordingly, we affirm.

## BACKGROUND

{2} La Vida Llena operates as a continuing care facility pursuant to the New Mexico Continuing Care Act, NMSA 1978, §§ 24-17-1 to -18 (1985, as amended through 2010). As governed by the Continuing Care Act, a continuing care facility is a live-in community that provides for "the residential, social and health maintenance needs for the elderly." Section 24-17-2(A). La Vida Llena requires that new residents of its facility be at least sixty-two years old and capable of living independently.

{3} In order to qualify for residency at La Vida Llena's facility, potential residents are required to possess assets equal to double their entrance fee and have a monthly income of one and one-half times their monthly fee. Residents pay an entrance fee of between $91,000 to $342,000 based on the size of the unit to be occupied. Residents pay a monthly fee ranging from $1697 to $3870 for the remainder of their stay. Once residents move into La Vida Llena's facility, their monthly payments remain the same regardless of whether the intensity of care increases. The entrance fee covers the expected cost for additional needs of the residents as they age.

{4} On April 20, 2010, the Assessor sent a notice of valuation for property taxes for La Vida Llena's facility. On May 18, 2010, La Vida Llena filed an application for exemption of property tax, which the Assessor denied. La Vida Llena filed an appeal to the Board. It based its claim for exemption upon its status as a facility operating under the Continuing Care Act and Section 7-36-7(B)(1)(d). Section 7-36-7(B)(1)(d) provides for a property tax exemption for continuing care facilities if the facility meets three criteria: the facility (1) has been granted an exemption from federal income taxes pursuant to 26 U.S.C. § 501(c)(3) (2010); (2) "donates or renders gratuitously a portion of its services or facilities;" and (3) "uses all funds remaining after payment of its usual and necessary expenses of operation, including the payment of liens and encumbrances upon its property, to further its charitable purpose, including the maintenance, improvement or expansion of its facilities."

{5} After an evidentiary hearing, the Board upheld the Assessor's denial of La Vida Llena's claimed exemption. The Board concluded that La Vida Llena failed to demonstrate that it "donates or renders gratuitously a portion of its services or facilities" for charitable purposes as contemplated by Section 7-36-7(B)(1)(d). The Board made several factual

findings regarding evidence that La Vida Llena presented to support its position that it did "donate[] or render[] gratuitously a portion of its services or facilities[.]" Section 7-36-7(B)(1)(d). The Board found that:

19.     [La Vida Llena] controls what is in essence a captive foundation solely for the benefit of residents unable to meet their obligations. The foundation, funded by resident contributions, helps residents with bills, such as pharmacy, dentist and other medical bills and in some instances credit card bills and pays out $65,000-$100,000 per year.

20.     Residents receive help from the foundation for different periods of time and in different amounts, but are given care for life regardless of ability to pay; residents are not asked to leave if they run out of funds after being accepted for entry.

21.     As a separate track, when space is available [La Vida Llena] serves Medicaid residents who are not members of the community as described above. There is a "differential" between cost and Medicaid reimbursement.

22.     [La Vida Llena] makes its facilities available for meetings by numerous groups. These tend to be groups with which residents or employees have an association or interest.

23.     Employees are permitted time to serve other charitable organizations.

However, the Board determined that it "cannot find that any *material* portion of [La Vida Llena]'s services and facilities are 'donated' or 'rendered gratuitously' as those terms are commonly used. Rather, the use of [La Vida Llena]'s services and facilities is incidental to its business operations." (Emphasis added.)

{6}     La Vida Llena appealed the Board's decision to the district court. The district court reversed the Board's decision, holding that the Board's factual findings supported a determination that La Vida Llena "donates or renders gratuitously *a portion* of its services or facilities." The district court concluded that "Section 7-36-7(B)(1)(d) does not provide for a minimum amount of charitable acts" and that the word "portion" in Section 7-36-7(B)(1)(d) does not contain a quantitative meaning. According to the district court, La Vida Llena donated or rendered a portion of its facilities and services because the Board found that "unchallenged evidence [establishes that La Vida Llena] donated the use of meeting rooms, that it donated some services of its employees, and that it donated approximately $65,000 in 2009 and $100,000 in 2010 through [the f]oundation." The district court also stated that La Vida Llena "provided evidence that it provides care at a cost greater than what it is reimbursed through Medicaid, and considers the cost-differential it absorbs to be a

3

donation" and that it does not terminate agreements with residents for failure to pay when the resident cannot afford the monthly fees.

**{7}** The Assessor petitioned this Court for a writ of certiorari pursuant to Rule 12-505(C) NMRA, which this Court granted. The Assessor argues that the district court erred in reversing the decision of the Board by (1) incorrectly determining that the word "portion" in Section 7-36-7(B)(1)(d) does not contain a minimum quantitative threshold on the amount of services and facilities that a continuing care facility must donate or render gratuitously; and (2) rejecting the Board's factual finding that La Vida Llena failed to donate a "meaningful" portion of its services or facilities to qualify for the exemption contained in Section 7-36-7(B)(1)(d).

**{8}** The only issue on appeal is whether La Vida Llena "donates or renders gratuitously a portion of its services or facilities" as contemplated by Section 7-36-7(B)(1)(d). The Assessor concedes that La Vida Llena operates as a continuing care facility under the Continuing Care Act, has been granted an exemption from federal income taxes pursuant to § 501(c)(3), and "uses all funds remaining after payment of its usual and necessary expenses of operation, including the payment of liens and encumbrances upon its property, to further its charitable purpose, including the maintenance, improvement or expansion of its facilities[.]" Section 7-36-7(B)(1)(d).

## SECTION 7-36-7(B)(1)(d)

### Standard of Review

**{9}** Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court "conduct[s] the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. In conducting our whole record review, we review the "record of the administrative hearing to determine whether the [b]oard's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 5, 140 N.M. 198, 141 P.3d 542 (internal quotation marks and citation omitted). When an administrative decision is based on an issue of law, such as statutory interpretation, our review is de novo. *ERICA, Inc. v. N.M. Regulation & Licensing Dep't*, 2008-NMCA-065, ¶ 11, 144 N.M. 132, 184 P.3d 444. However, although we engage in whole record review, we will not disturb any of an agency's factual findings that are supported by substantial evidence. *Montano v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 8, 145 N.M. 494, 200 P.3d 544.

### Quantitative Meaning of "Portion"

**{10}** We first address the Assessor's argument that the district court erred in determining that Section 7-36-7(B)(1)(d) does not provide for a minimum threshold amount of facilities

or services that a continuing care facility must donate or render gratuitously because the word "portion" does not contain a quantitative meaning. In the Assessor's view, a reasonable interpretation of the word "portion" requires that a continuing care facility gratuitously donate some meaningful quantitative amount or percentage of its revenue in order to meet the statutory requirement for an exemption. Without such a quantitative requirement, the Assessor asserts that the gratuitous donation requirement in the statute becomes superfluous. This issue requires the Court to interpret the statutory language in Section 7-36-7(B)(1)(d).

**{11}** In engaging in statutory construction, our primary purpose is to give effect to the intent of the Legislature. *Bd. of Educ. v. N.M. State Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 16, 128 N.M. 398, 993 P.2d 112. "The first rule is that the plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent. The court will not read into a statute . . . language which is not there, particularly if it makes sense as written." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 27, 127 N.M. 120, 978 P.2d 327 (internal quotation marks and citations omitted). Although we apply the plain meaning rule, a "construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." *Cox v. N.M. Dep't of Pub. Safety*, 2010-NMCA-096, ¶ 15, 148 N.M. 934, 242 P.3d 501 (internal quotation marks and citation omitted). Additionally, when interpreting a statute, all sections of the statute "must be read together so that all parts are given effect." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599.

**{12}** The Assessor also contends that the gratuitous donation requirement of Section 7-36-7(B)(1)(d) must contain a quantitative element in order to prevent a continuing care facility from abusing the available tax exemption. However, the Assessor's view is unduly focused on the word "portion," and the singular requirement that a continuing care facility donate or render gratuitously a portion of its services or facilities. The donation of services or facilities is only one of the requirements of Section 7-36-7(B)(1)(d). When we read the three requirements together, the legislative intent becomes apparent. *See Key v. Chrysler Motors Corp.*, 121 N.M. 764, 769, 918 P.2d 350, 355 (1996) ("[A]ll parts of a statute must be read together to ascertain legislative intent. We are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." (citation omitted)). First, the Legislature required that the facility be exempt from federal income taxes. Section 7-36-7(B)(1)(d). Additionally, Section 7-36-7(B)(1)(d) requires that a continuing care facility "use[] all funds remaining after payment of its usual and necessary expenses of operation . . . to further its charitable purpose[.]" Through this last requirement, Section 7-36-7(B)(1)(d) contains a mandate that a continuing care facility use all of its proceeds to further its charitable purpose. By not defining a minimum gratuitous contribution amount in the second requirement, the Legislature has provided flexibility for a continuing care facility to qualify for its property tax exemption while also allowing the facility to annually determine the most appropriate way of achieving its overall charitable

5

purposes.

**{13}** The plain meaning of the word "portion" further reinforces our conclusion. When determining the plain meaning of a term in a statute, we are guided by the common and ordinary use of the term as ascertained by a dictionary. *See Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 ("We . . . hold that the common and ordinary meaning . . . may be ascertained from a dictionary."). In this context, "portion" is defined as "an individual's part or share of something" or "a part of a whole." *Webster's Third New Int'l Dictionary* 1768 (Unabridged 1993). The plain meaning of "portion" is therefore synonymous with "part" and does not contain a minimum quantitative meaning. Accordingly, under the plain meaning rule, Section 7-36-7(B)(1)(d) does not require a minimum amount of donated or gratuitously rendered services or facilities for charitable purposes in order for the continuing care facility to receive the property tax exemption.

**{14}** If the Legislature had intended for "portion" in Section 7-36-7(B)(1)(d) to contain a minimum threshold amount for the required charitable contributions, it would have expressly provided the manner for determining the intended amount. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 16, 146 N.M. 473, 212 P.3d 361 (stating that "[i]f the Legislature had intended to create different standards . . ., it likely would have done so expressly"). The Legislature has expressly defined "portion" in other statutes, including tax statutes, when it intended that the word "portion" to contain a minimum or threshold amount. *See, e.g.*, NMSA 1978, § 7-1-36(B) (1993) (stating that "there shall also be exempt from levy on an employer of the taxpayer the greater of the following *portions* of the taxpayer's disposable earnings: (1) seventy-five percent of the taxpayer's disposable earnings for any pay period; or (2) an amount each week equal to forty times the federal minimum hourly wage rate" (emphasis added)); NMSA 1978, § 6-6-19(B) (2011) ("The amount that may be deposited into the local government permanent fund is any *portion* of the unappropriated general fund surplus that is in excess of fifty percent of the prior fiscal year's budget of the county or municipality." (emphasis added)).

**{15}** The Assessor also argues that the plain meaning of "portion" is not so easily ascertainable and that "[a]n examination of different dictionary definitions of portion reveals that it is a dynamic word with a variety of possible meanings." The Assessor further argues that due to the various meanings of "portion," we should construe Section 7-36-7(B)(1)(d) as requiring that the portion a continuing care facility donates or renders gratuitously for charitable purposes should exceed the benefit that the public loses in tax revenue as a result of the exemption. In the Assessor's view, this interpretation of the "donation requirement should be decided on a case[-]by[-]case basis" and furthers the legislative purpose of "encourag[ing] charitable activities by providing them with tax relief, and to thereby promote the general welfare of society." *Sisters of Charity v. Cnty. of Bernalillo*, 93 N.M. 42, 45, 596 P.2d 255, 258 (1979). However, as the Assessor conceded at oral argument, a formula for such an inquiry is not readily ascertainable from Section 7-36-7(B)(1)(d), nor did the Assessor provide this Court with a framework to evaluate when a donation or rendering of services or facilities is sufficiently large enough to be a "portion."

6

**{16}** Additionally, the Assessor's interpretation of Section 7-36-7(B)(1)(d) requires that this Court essentially rewrite the statute and place a minimum donation amount comparable to the loss of tax revenue. We decline to do so. *See Martinez v. Sedillo*, 2005-NMCA-029, ¶ 7, 137 N.M. 103, 107 P.3d 543 ("We will not rewrite a statute."). Although, we agree that "portion" is a dynamic word and can have a number of possible meanings depending on the context, the Assessor fails to point to a single definition of "portion" that contains a quantitative minimum or any definition that supports its interpretation.

**{17}** Section 7-36-7(B)(1)(d) provides the mechanism for a continuing care facility with a federal income tax exemption to be exempt from property tax. It contains the legislative intent to encourage a continuing care facility to engage in charitable activity by requiring only that the continuing care facility donate or render gratuitously *a part* of its services or facilities without a threshold requirement, provided that, after payment of operational expenses, it uses the balance of its funds for charitable purposes. The district court did not err in concluding that "Section 7-36-7(B)(1)(d) does not provide for a minimum amount of charitable acts."

**Deference to Factual Findings**

**{18}** The Assessor also argues that the district court erred when, without citing any authority or acknowledging the standard of review, it rejected the Board's factual determination that La Vida Llena failed to prove that it donated a meaningful portion of its goods or services.

**{19}** Essentially, the Assessor argues that the district court failed to defer to several findings of fact considered by the Board that: (1) the donated meeting space was for organization and activities that are an integral part of the experience La Vida Llena offers to residents; (2) no material portion of La Vida Llena's services or facilities are donated or gratuitously rendered, and their use is incidental to its business operations; (3) the foundation was merely a vehicle of mutual assistance between residents of La Vida Llena and did not constitute charitable donations by La Vida Llena itself; and (4) there is no charity when the cost of service to long-term residents is less than actual revenues from those residents. We agree with the Assessor that a district court sitting in an appellate capacity and reviewing an agency's decision must accept all factual findings made by the agency as a factfinder that were supported by substantial evidence. *See Montano*, 2009-NMCA-009, ¶ 8 ("We will not disturb the agency's factual findings if supported by substantial evidence, although we engage in a whole record review."); *see also Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 48, 129 N.M. 413, 9 P.3d 657 (stating that "in administrative appeals the district court is a reviewing court, not a fact-finder"). Thus, to the extent that substantial evidence supports the Board's factual findings, the district court was required to give the factual findings deference and not substitute its judgment for that of the Board.

**{20}** However, the Assessor does not challenge the Board's findings that La Vida Llena (1) provides service to Medicaid residents when space is available and that the actual cost

of care to these Medicaid residents exceeds the Medicaid reimbursement and that this amount was approximately $30,000 in 2009; (2) permits its staff time to serve other charitable organizations; (3) provides services such as bookkeeping and safeguarding for the foundation even though it does not actually provide funds for the foundation; and (4) does not terminate resident agreements if residents do not pay, although it is permitted to do so in the resident agreements. Indeed, at oral argument, the Assessor conceded that there is a charitable aspect to providing service to Medicaid residents that exceeds Medicaid reimbursement. These factual findings are therefore binding on appeal. *See Franco v. Carlsbad Mun. Sch.*, 2001-NMCA-042, ¶ 13, 130 N.M. 543, 28 P.3d 531 (stating that unchallenged factual findings are binding on appeal). These uncontested factual findings made by the Board support a determination that La Vida Llena donated or rendered gratuitously at least some "portion" of its facilities and services.

**{21}** To the extent that the Assessor contends that the factual findings indicate that the Board did not find that La Vida Llena rendered a "meaningful" amount of its goods and services to qualify for the exemption, this argument simply restates the previous argument that "portion" as used in Section 7-36-7(B)(1)(d) has a quantitative threshold. The meaning of "portion" and whether it contains a quantitative threshold is a legal question requiring statutory interpretation, not a factual determination entitled to deference. We have concluded that "portion" contemplates no such threshold requirement.

**CONCLUSION**

**{22}** The district court did not err by determining that Section 7-36-7(B)(1)(d) does not require a minimum amount of donated or gratuitously rendered services or facilities for charitable purposes in order for the continuing care facility to receive the property tax exemption. Additionally, the district court did not err by failing to give deference to certain findings of the Board. Accordingly, we affirm.

**{23} IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *La Vida Llena v. Montoya*, No. 31,711**

**APPEAL AND ERROR**
Certiorari
Standard of Review

**ASSOCIATION AND SOCIETIES**
Charitable Organization
Hospitals

**PUBLIC ASSISTANCE**
Medicare and Medicaid

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction

**TAXATION**
Property Tax
Valuation